UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MICHAEL DENTON AND PAMELA DENTON** | **CIVIL ACTION NO. 12-0328** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **FOSTER POULTRY FARMS, INC.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court are a Motion in Limine to Exclude Testimony of Danny Adams and Thomas Wiberg [Doc. No. 68] filed by Defendant Foster Poultry Farms Delaware, Inc. ("Foster Farms"). Plaintiffs Michael Denton and Pamela Denton ("Plaintiffs" or "the Dentons") filed a memorandum in opposition to Foster Farms' motion [Doc. No. 79], and Foster Farms filed a reply memorandum [Doc. No. 81].

For the following reasons, Foster Farms's Motion in Limine is DENIED.

Foster Farms owns and operates a poultry processing facility in Union Parish. The facility's processes of rendering, cooking, and slaughtering produce wastewater. After being subjected to multiple treatments, wastewater from the facility flows through an outfall which has been approved by the Louisiana Department of Environmental Quality ("LDEQ"). After passing through the outfall, the wastewater flows into Honeycutt Creek. Honeycutt Creek flows into Four Mile Creek downstream of Foster Farms. Four Mile Creek flows southeast from the Foster Farms facility and passes behind property owned by the Dentons.[1]

---

[1] Eventually, Four Mile Creek flows into Lake D'Arbonne.

The Dentons brought this lawsuit alleging that Foster Farms is liable for negligently causing harm to their property by releasing contaminated waste water. In addition to their negligence claim, the Dentons allege that Foster Farms' actions constitute a nuisance and a trespass under Louisiana law.

In support of their claims, the Dentons rely on an expert report and supplemental expert report from Danny Adams ("Adams"), Ecology Program Manager, and Thomas Wiburg ("Wiburg"), Project Manager, of EnSafe, an environmental consulting company. Foster Farms moves to exclude the testimony of Adams and Wiberg, arguing that they will improperly testify as to legal conclusions and that their testimony on environmental impact and damages is derived from "unsound methodology, *ipse dixit* reasoning, and disregard [of] the uncontested facts of the case." [Doc. No. 68, p. 1]. The Dentons oppose Foster Farms' motion and provide declarations from Adams and Wiberg that they applied the methodology for water testing, soil testing, site remediation, and acceptable standards for emissions used by environmental science practitioners and based on their experience and observations.

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a

particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).

Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) ("[T]he trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony."). Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In determining reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." 509 U.S. at 589. "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 152)).

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . " *United States v.*

*14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Finally, "[t]wo cautions signify: the trial court ought not 'transform a *Daubert* hearing into a trial on the merits,' and 'most of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury.'" *In re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 329 (5th Cir. 2013) (quoting *Pipitone*, 288 F.3d at 250; *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).

In this case, Foster Farms does not contest Adams' and Wiberg's qualifications. However, Foster Farms does challenge their testimony on other grounds. Specifically, Foster Farms argues that Adams' and Wiberg's testimony is not helpful under Rule 702 because they do not provide the basis for their opinions, they failed to apply the LDEQ's Risk Evaluation/Correction Action Program ("RECAP") standard for evaluating environmental harm, their damages calculation relies on nothing but *ipse dixit* to calculate damages, and their opinions on damages is based on a flawed interpretation of Louisiana law. Foster Farms contends that Adams' and Wiberg's methodology was flawed because they collected a limited number of soil and water samples from the Dentons' property and from the "background" property and tested for constituents of concern, but they failed to apply RECAP or EPA standards. Foster Farms also takes issue with the reliability of Adams' and Wiberg's opinions when they did not interview

LDEQ employees or the Dentons, did not observe Foster Farms' wastewater treatment system, and did not compare exceedances to the discharge monitoring reports Foster Farms provides to LDEQ monthly. Foster Farms further attacks Adams' and Wiberg's testimony because, they allege, Adams and Wiberg did not use appropriate background samples, did not analyze the Dentons' use of the property or the possible effects from other sources of contamination, did not identify any dead vegetation, and did not perform an ecological risk assessment. Foster Farms further challenges Adams' and Wiberg's testimony because of their recommendation that the damages be addressed with remediation without explaining whether they considered other methods of damages calculations. Finally, Foster Farms moves to exclude Adams' and Wiberg's testimony on the legal conclusion that the Dentons' property was "damaged," as defined under Louisiana Civil Code article 667.

In response, the Dentons respond that their experts used methods that were developed by the EPA and state DEQs and are standard operating procedure in consulting firms, such as EnSafe. The methodology has been tested by labs and environmental professionals and has a low error rate, and , further, they use peer review by submitting findings to EnSafe's other expert. The Dentons deny the use of *ipse dixit* reasoning and explained that their experts found no other flow into Four Mile Creek other than Foster Farms, and the Arcadis Report shows a 50-fold increase in nitrates immediately downstream from Foster Farms facility. Likewise, their expert had a basis for his choice of remediation method because of his substantial experience and in light of the historical and planned uses of property. Although RECAP is a guideline for state government remediation, Adams applied the standard environmental professionals use to determine damage and harm, which is also appropriate. In this case, he relied on EPA standards

in determining whether the constituent levels were elevated to the extent that remediation was necessary.

Having reviewed the arguments and evidence, the Court finds that the Dentons have shown Adams' and Wiberg's opinions to be sufficiently relevant and reliable for admissibility under Rule 702. The Court has taken the arguments of Foster Farms under advisement and will consider them as applicable in ruling on the pending Motion for Summary Judgment and, if necessary, at trial. However, those arguments are more appropriately considered as an attack on the weight of the evidence, rather than exclusion of the testimony.

### III. CONCLUSION

For the foregoing reasons, Foster Farms' Motion in Limine [Doc. No. 68] is DENIED.

MONROE, LOUISIANA, this 31st day of October, 2013.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE